**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION**

**JONATHAN ALAN BALL**                                                                 **PLAINTIFF**

**V.**                          **NO. 3:21-cv-239-DPM-ERE**

**DARRELL ELKIN and
MELLISSA SISCO**                                                                              **DEFENDANTS**

**RECOMMENDED DISPOSITION**

**I.      Procedure for Filing Objections:**

This Recommendation for dismissal has been sent to United States District Chief Judge D.P. Marshall Jr. Any party may file written objections to all or part of this Recommendation. Any objections filed must: (1) specifically explain the factual and/or legal basis for the objection; and (2) be received by the Clerk of this Court within fourteen (14) days of the date of this Recommendation. If no objections are filed, Chief Judge Marshall may adopt this Recommendation without independently reviewing all of the evidence in the record. By not objecting, the parties may waive the right to appeal questions of fact.

**II.     Background:**

Plaintiff Jonathan Alan Ball, a pre-trial detainee at the Randolph County Detention Center ("Detention Center"), filed this civil rights lawsuit *pro se* under 42 U.S.C. § 1983 alleging that Defendants Darrell Elkin and Mellissa Sisco have been

deliberately indifferent to his need for medical treatment. As a result, he contends that he has suffered significant back pain. *Doc. 2.*

Defendants have filed a motion for summary judgment, statement of undisputed facts, and brief in support. *Docs. 18, 19, 20.* Mr. Ball has not responded to Defendants' motion, and the time for doing so has passed.[1] *Doc. 21.* For the reasons stated below, Defendants' motion for summary judgment should be granted.

### III. Discussion:

#### A. Standard

Summary judgment is appropriate when the record, viewed in a light most favorable to the nonmoving party, demonstrates that there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. See FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 249-50 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex*, 477 U.S. at 323. Once that has been done, the nonmoving party must come forward with specific facts demonstrating that there is a material dispute for trial. See FED. R. CIV. P. 56(c); *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011). A party is entitled to summary judgment if - but only if - the evidence

---

[1] Because Mr. Ball failed to file a statement of disputed facts, the facts contained in Defendants' statement of undisputed facts are deemed admitted. See Local Rule 56.1(c).

shows that there is no genuine dispute about any fact important to the outcome of the case. *See* FED. R. CIV. P. 56; *Odom v. Kaizer*, 864 F.3d 920, 921 (8th Cir. 2017).

**B.     Factual Background[2]**

In 2015 or 2016, Mr. Ball was involved in an accident while working at Peco. *Doc. 18-1 at 9*. Several weeks after the accident, a physician examined him and told him that he had broken a bone in the lower part of his back. *Id*. *at 9-10.* In 2016 or 2017, Dr. Richardson, an orthopedic surgeon, operated on Mr. Ball's back. *Id. at 10*. About two and a half years later, Mr. Ball underwent a second back surgery. *Id. at 11*.

In his deposition, Mr. Ball testified that, since his back injury, physicians have prescribed him Oxycodone, Hydrocodone, Flexeril, Somas, Tizanidine, and Dicloflex. *Doc. 18-1 at 11*. He also has had an unspecified number of: (1) bi-weekly nerve-deadening injections in his back; and (2) nerve deadening surgeries.[3] *Id. at 14-15*.

On March 10, 2021, Mr. Ball was booked into the Detention Center. *Doc. 18-2 at 7*. At that time, according to Mr. Ball, he had active, daily prescriptions for Clonazepam, Zoloft, Gabapentin, Hydrocodone, Flexeril, Atenolol, and Simvastatin.

---

[2] These facts are taken from Mr. Ball's deposition as well as his jail and medical records. *Docs. 18-1, 18-2, 18-3*.

[3] Mr. Ball testified that he was supposed to have the nerve deadening surgery every six months. However, based on the record before the Court, it is unclear how many of those procedures Mr. Ball underwent.

3

*Doc. 18-1 at 17*.

On March 23, 2021, Dr. Victor McNerney (not a party to this lawsuit) discontinued Mr. Ball's Hydrocodone, Clonazepam, and Zoloft prescriptions. *Doc. 18-3 at 4-5*. Dr. McNerney issued Mr. Ball prescriptions for Divalproex Sodium (Depakote), Trazodone (Desyrel), Quetiapine (Seroquel), and Hydroxyzine Pamoate (Vistaril), and recommended that Mr. Ball continue taking Atenolol. *Id. at 4*. Dr. McNerney noted Mr. Ball's history of bipolar disorder. *Id. at 6*.

On June 7, 2021, Mr. Ball completed a medical call requesting "my pills my folks brought in need refilled and take them so I can sleep and not be depressed." *Doc. 18-2 at 195*. Detention Center staff responded by asking, "is there more?" *Id*.

On June 23, 2021, Mr. Ball submitted another medical call explaining that he needed refills for Simvastatin, Trazadone, Flexeril, Zoloft, Hydrocodone, and Clonazepam. *Id. at 196*. Tonia Poff responded that she would forward Mr. Ball's request to the doctor. *Id*.

On August 16, 2021, Mr. Ball: (1) notified Detention Center staff[4] about his back problems and previous surgeries; (2) advised them to obtain copies of his medical records; and (3) requested that they notify his attorney so that he could be released from custody. *Doc. 18-2 at 197, 181*. The same day: (1) Detention Center

---

[4] In his complaint, Mr. Ball stated that, on August 16, 2022, he personally told Defendant Elkin about his back injury and previous medical treatment. *Doc. 1 at 4*.

4

staff noted that they would request Mr. Ball's previous medical records (*Id.*); and Defendant Sisco responded by telling Mr. Ball to notify his lawyer. *Id. at 181*.

On August 19, 2021, Mr. Ball filed an inmate request inquiring as to whether Detention Center staff had found his "trazadones[,] sembstations, and my flexarells [sic]." *Doc. 18-2 at 179*. The same day, Laura Sims responded that she would "check and see." *Id*.

On October 7, 2021, Mr. Ball submitted an inmate request form requesting "pain killers, please [T]ylenol." *Doc. 18-2 at 134*. On the same day, Ms. Sims responded, "okay." *Id*.

On November 3, Mr. Ball submitted a medical call explaining the previous treatment he had received for back pain and complaining about his need for pain medication. *Id. at 199*.

On November 4, 2021, Mr. Ball submitted an inmate request form explaining that he was not seen by the physician on that date. *Id. at 74*. Ms. Sims responded that she would "let them know." *Id*.

On November 5, Mr. Ball submitted multiple inmate requests regarding the requests that he had made for Cortisone shots, nerve surgery and prescription medication. *Id. at 69, 68, 67*. Ms. Poff responded that "as a rule[,] narcotics should not be prescribed when [] incarcerated", and that Mr. Ball should submit a medical request. *Id. at 68, 69*.

On November 6, 2021, Mr. Ball filed an inmate request form stating that the Tylenol that Detention Center staff gave him could not provide him any relief for a broken back. *Doc. 18-2 at 65*. S. Farnam responded the same day by explaining that Mr. Ball would have to submit a medical request because "that[']s all we have." *Id*.

On November 10, 2021, Mr. Ball submitted an inmate medical request form complaining about his need for medical care. *Doc. 18-2 at 40*. He stated that the "new doctor" did not examine him on that date, and he requested a Gabapentin prescription. *Id*. On the same date, he filed a medical call raising the same complaints. *Id. at 199*.

On November 17, Mr. Ball submitted a medical call indicating that he needed the doctor to increase his dosage of Trazodone. *Id. at 198*. Ms. Poff noted that she would forward Mr. Ball's complaint to the doctor. *Id*.

The next day, Mr. Ball submitted a medical call complaining about his need for additional Gabapentin and again notifying staff of his previous medical treatment. *Id*. Again, Ms. Poff noted that she would forward Mr. Ball's complaint to the doctor. *Id*.

On November 19, Mr. Ball submitted a sick call request asking the doctor to provide him Trazadone rather than Flexeril. *Id*. Again, Ms. Poff noted that she would forward Mr. Ball's complaint to the doctor. *Id*.

On November 25, Mr. Ball submitted a medical call requesting that the doctor

change his medication and provide him additional medical treatment, including back injections and surgery. Again, Ms. Sims noted that she would forward Mr. Ball's complaint to the doctor. *Id*.

On December 2, 2021, submitted another medical call complaining about his back problems. *Id. at 198*. Officer Farnam noted that he/she would forward Mr. Ball's complaint to the doctor. *Id*.

### C.    Medical Deliberate Indifference Claim

Deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain and violates the Constitution.[5] *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (omitting quotations and citation). An inadvertent or negligent failure to provide adequate medical care does not amount to deliberate indifference. *Johnson v. Leonard*, 929 F.3d 569, 575 (8th Cir. 2019) (explaining that deliberate indifference is more than negligence or gross negligence and requires culpability akin to criminal recklessness). Likewise, disagreement with treatment decisions cannot support a deliberate indifference claim. *Barr v. Pearson*, 909 F.3d 919, 921-22 (8th Cir. 2018) (reiterating that inmates have no right to a particular or requested course of treatment, and a mere difference over matters of expert medical

---

[5] As a pre-trial detainee, Mr. Ball's medical deliberate-indifference claim is analyzed under the Fourteenth Amendment. However, the Eighth Circuit has repeatedly "applied the same 'deliberate indifference' standard as is applied to Eighth Amendment claims made by convicted inmates." *Vaughn v. Greene Cty., Ark.*, 438 F.3d 845, 850 (8th Cir. 2006).

judgment or the course of treatment do not amount to a constitutional violation); see also *Dulany v. Carnahan*, 132 F.3d 1234, 1239-40 (8th Cir. 1997) (where medical records show that treatment was provided; and physician affidavits state that the care was adequate, an inmate's belief that she did not receive adequate care is insufficient to create a material factual dispute).

Defendants can be held liable only if their actions were "so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care." *Dulany*, 132 F.3d at 1240-1241 (citing *Smith v. Jenkins*, 919 F.2d 90, 93 (8th Cir. 1990)). "Merely demonstrating that a prison doctor committed medical malpractice is insufficient to establish deliberate indifference." *Jackson v. Buckman*, 756 F.3d 1060, 1065-1066 (8th Cir. 2014) (internal citation omitted). Mr. Ball "must clear a substantial evidentiary threshold" to show that Defendants acted with deliberate indifference. *Johnson*, 929 F.3d at 576.

Based on a review of Mr. Ball's medical records, during the time period in question, Detention Center staff: (1) consistently and promptly responded to his requests; (2) consistently monitored his prescription medication and refills; (3) consistently provided him his prescription medication; and (4) informed him that physicians could not provide him narcotics while he was incarcerated. Such conduct can hardly be characterized as deliberate indifference. At most, Mr. Ball claims that Defendants acted negligently in failing to provide him the prescription medication

8

that he preferred, as well as to ensure that he receive back injections and surgery. *Doc. 43 at 5, 6, 7*. However, Mr. Ball has failed to provide any evidence that the requested medications and procedures were medically necessary. At most, Mr. Ball disagreed with the treatment Defendants provided him. Such conduct does not constitute deliberate indifference.

Moreover, in his deposition, Mr. Ball testified that, although Defendant Elkin, a doctor, ignored his requests for both the injections and the nerve surgeries, he admits that he never specifically requested that Dr. Elkin schedule his back injections and that Defendant Sisco, an administrator, attempted to do so. *Id. at 21*. He also explained that he did not know if Defendant Sisco did anything wrong. *Id. at 20*. Rather, Mr. Ball admitted that he sued her "in case" she failed to do something that Defendant Elkin had ordered her to do. *Doc. 18-1 at 20-21*.

Mr. Ball has failed to come forward with any evidence from which a factfinder could conclude that Defendants' conduct was even arguably criminally reckless. At the summary judgment stage, Mr. Ball's unsupported assertions that Defendants were deliberately indifferent are insufficient. "'When the movant makes a *prima facie* showing of entitlement to summary judgment, the respondent must discard the shielding cloak of formal allegations and meet proof with proof by showing a genuine issue as to a material fact.'" *Conseco Life Ins. Co. v. Williams*, 620 F.3d 902, 909 (8th Cir. 2010) (quoting *Flentje v. First Nat'l Bank of Wynne*, 11 S.W.3d

531, 539 (2000)). Accordingly, Defendants are entitled to judgment as a matter of law on Mr. Ball's federal claims for medical deliberate indifference. To the extent that Mr. Ball intended to also bring claims for negligence and/or medical malpractice under Arkansas law, the Court should decline to entertain supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(c)(3).

## IV.   Conclusion:

IT IS THEREFORE RECOMMENDED THAT:

1. Defendants' motion for summary judgment (*Doc. 18*) be GRANTED.

2. Mr. Ball's federal constitutional claims be DISMISSED, with prejudice, and any supplemental state-law claims be DISMISSED, without prejudice, pursuant to 28 U.S.C. § 1367.

3. Judgment be entered in favor of Defendants.

4. The Clerk be instructed to close this case.

Dated this 15th day of September, 2022.

_____
UNITED STATES MAGISTRATE JUDGE